NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0951-24

> **APPROVED FOR PUBLICATION**
>
> **July 30, 2026**
>
> **APPELLATE DIVISION**

CARTERET BUSINESS
PARTNERSHIP, INC.,

      Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION,

      Respondent-Respondent.

_____

Argued June 4, 2026 – Decided July 30, 2026

Before Judges Mawla, Marczyk and Puglisi.

On appeal from the New Jersey Department of
Environmental Protection.

Dominic J. Aprile argued the cause for appellant
(Bathgate Wegener & Wolf, PC, attorneys; William J.
Wolf and Daniel J. Carbone, on the briefs).

Elizabeth Delahunty, Deputy Attorney General,
argued the cause for respondent (Jennifer Davenport,
Attorney General, attorney; Janet Greenberg Cohen,
Assistant Attorney General, of counsel; Elizabeth
Delahunty, on the brief).

Scott E. Reiser argued the cause for intervenor Township of Woodbridge (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Scott E. Reiser and Steven J. Eisenstein, of counsel and on the brief).

The opinion of the court was delivered by

MARCZYK, J.A.D.

Petitioner Carteret Business Partnership, Inc. (CBP) appeals from the New Jersey Department of Environmental Protection's (DEP) November 18, 2024 final agency decision, which reversed the administrative law judge's (ALJ) initial decision and granted the DEP's motion for summary decision. The primary issue on appeal is whether the DEP has authority under N.J.A.C. 7:14A-22.8(a)(3)(v) to consider a treatment works approval (TWA) application that lacks consent from the receiving wastewater treatment plant. We conclude the DEP reasonably interpreted the regulation to require the receiving wastewater treatment plant's consent as a mandatory prerequisite to considering a TWA application, such that it was precluded from considering CBP's application. Accordingly, we affirm.

I.

A. Background.

This appeal arises from the DEP's denial of CBP's TWA application to construct and operate two gravity sanitary sewer laterals to service a sixty-four-unit mixed-use development in the Borough of Carteret. The proposed

development would discharge effluent into Carteret's municipal wastewater conveyance system, which connects to the Township of Woodbridge's wastewater conveyance system. Ultimately, the wastewater would be conveyed into the Middlesex County Utilities Authority's (MCUA) wastewater treatment plant. Pursuant to a 1987 agreement, Woodbridge permits Carteret to use its sewer system to transport sewage to the MCUA.

CBP submitted the TWA application to the DEP in November 2022, which included a WQM-003 Consent Form (Consent Form) pursuant to N.J.A.C. 7:14A-22.8(a)(3). The Consent Form included two required signatures from Carteret, evidencing its consent and certification to the application, in Sections A and B, respectively titled "Consent by Governing Body" and "Certification by Wastewater Conveyance System Owner." However, the Consent Form lacked the MCUA's signature in Section C, titled "Certification by Wastewater Treatment Facility Owner." In an email attached to CBP's application, the MCUA explained it would not endorse the application because it was "administratively incomplete," as it lacked Woodbridge's endorsement "to convey sanitary sewer flows through [its] collection system to [the] MCUA." CBP noted Woodbridge would not agree to convey the wastewater to the MCUA and consent to CBP's TWA application

because of an "intermunicipal pecuniary conflict" between Carteret and Woodbridge.

In a November 7, 2022 letter, CBP requested the DEP approve the application pursuant to N.J.A.C. 7:14A-22.8(a)(3)(v), despite the fact it was missing the MCUA's signature on the Consent Form. On November 14, 2022, the DEP erroneously provided a notice of administrative completeness to CBP, however, it subsequently advised CBP Section C of its Consent Form was missing a mandatory signature. In a December 21, 2022 letter, CBP acknowledged the MCUA's signature was still missing but reiterated its request the DEP approve its application, again asserting the agency had the authority to do so under N.J.A.C. 7:14A-22.8(a)(3)(v)(5).

In February 2023, the DEP denied the TWA application. It reasoned it lacked the authority to issue the permit because the MCUA—the wastewater treatment facility owner—had not executed the Consent Form to certify the wastewater would be treated and the plant was following the New Jersey Pollution Discharge Elimination System (NJPDES) permit requirements. The DEP explained:

> [The] MCUA has notified this office that they will not endorse and provide consent until . . . Woodbridge provide[s] . . . consent as [the] "Wastewater Conveyance System Owner." The wastewater flow from this project will be conveyed to the MCUA for

> treatment using [a] downstream sewage conveyance system, owned and operated by . . . Woodbridge.

CBP challenged the denial and requested an adjudicatory hearing.[1]  In October 2023, the matter was referred to the OAL for a hearing before an ALJ. Woodbridge moved to intervene, which the ALJ granted.  In April 2024, the DEP moved for summary decision.  CBP opposed the motion.

B.    The ALJ's Initial Decision.

On July 8, 2024, the ALJ issued an initial decision, finding the DEP had authority to consider CBP's TWA application pursuant to N.J.A.C. 7:14A-22.8(a)(3)(v)(5).  She rejected the agency's interpretation the regulation does not apply when the wastewater treatment facility owner is the entity withholding consent.  The ALJ reasoned the agency's interpretation was inconsistent with the regulation's language, "which require[s] the []DEP to step in to make a decision when the affected municipality, the sew[er]age authority, and/or the treatment facility owner refuse[s] to do so."  She noted the Law Division had also reviewed the regulation and determined the DEP should

---

[1]  In February 2023, prior to the DEP's denial of its application, CBP filed a verified complaint in lieu of prerogative writs in the Law Division, seeking an order compelling the MCUA to consent to its TWA application.  The court subsequently granted a motion to transfer venue to the Office of Administrative Law (OAL).  See Carteret Bus. P'ship v. Twp. of Woodbridge, No. L-0674-23 (Law Div. Apr. 18, 2023) (order at 2).  However, the matter was already before the OAL pursuant to CBP's hearing request regarding the DEP's denial of its TWA application.

administratively resolve the issue, as CBP had asked the agency to do. The ALJ also emphasized the regulation states the DEP "shall" consider the reasons for the lack of consent in determining whether to approve an application. Although the affected parties had not disclosed their reason for denying consent, the ALJ found the agency had the authority to compel such disclosure.

Alternatively, if the TWA regulations preclude consideration without the MCUA's consent, the ALJ determined the DEP should instruct CBP how to proceed without consent. Accordingly, the ALJ denied the DEP's motion for summary decision, granted summary decision in favor of CBP, and ordered the agency to consider CBP's TWA application on its merits. The DEP filed exceptions to the ALJ's decision, and CBP and Woodbridge filed responses.

C.    The DEP's Final Agency Decision.

On November 18, 2024, the DEP Commissioner issued a final agency decision, reversing the ALJ's initial decision and granting the DEP's motion for summary decision. He found the ALJ's initial decision failed to follow the plain meaning of N.J.A.C. 7:14A-22.8(a)(3)(v)(5) and "improperly imposed requirements on [the] DEP that are not set forth in the TWA regulations." Thus, the Commissioner concluded the DEP lacked authority under the regulation to review CBP's TWA application without the MCUA's consent.

The Commissioner determined summary decision was appropriate, and the interpretation of N.J.A.C. 7:14A-22.8(a)(3)(v)(5) could be resolved as a matter of law. Indeed, "all parties agree[d] that [the] MCUA, the wastewater treatment facility owner, did not sign [the] DEP's [Consent F]orm as part of CBP's TWA application and that Woodbridge would also not sign the form as a wastewater conveyance system owner." He reasoned N.J.A.C. 7:14A-22.8(a)'s plain text, structure, history, and administrability does not allow the DEP to review a TWA application without the wastewater treatment facility owner's consent.

The Commissioner found although N.J.A.C. 7:14A-22.8(a)(3)(v) "sets out an alternate path for an applicant that cannot get consent as required by N.J.A.C. 7:14A-22.8(a)(3), a review of N.J.A.C. 7:14A-22.8(a)(3)(v)(1) through (5) clearly reveals that . . . path is limited only to when an 'affected municipality' or 'affected sewerage authority' withholds such consent." (Citations reformatted). Accordingly, he reasoned the receiving wastewater treatment plant's consent is mandatory because it is not mentioned in those subsections, and the DEP would have included it had the agency intended to carve out an exception for obtaining its consent.

The Commissioner also found the regulatory history of N.J.A.C. 7:14A-22.8 clearly showed the DEP's intent to require the receiving treatment plant

7

owner's consent. He determined the ALJ's decision was "therefore contrary to the applicable TWA regulations and undermine[d the] DEP's purpose in requiring consent from the wastewater treatment facility owner to protect public health and maintain the integrity of New Jersey's waters." Citing 41 N.J.R. 142(a) (Jan. 5, 2009), the Commissioner explained it was the wastewater treatment facility owner's responsibility, not the DEP's, to ensure the facility can accept the additional flow from the project and continue to comply with its NJPDES permit. He found that interpretation also aligned with the TWA program's general policy and purpose, as outlined in N.J.A.C. 7:14A-22.1(b). Accordingly, the Commissioner determined, "[c]onsent from the owner of the receiving wastewater treatment plant is a non-negotiable requirement in a TWA application and cannot be waived."

The Commissioner further found the ALJ's initial decision failed to apply the "appropriate deferential standard to [the] DEP's interpretation and implementation of its rules." He noted the ALJ erred in finding the DEP was required to direct CBP on how to move forward if the agency lacked the regulatory authority to review its TWA application. The Commissioner reasoned "no regulatory requirement in N.J.A.C. 7:14A-22.8 or in any other TWA regulation . . . requires [the] DEP to undertake such action." He explained:

A-0951-24

The reasons why [the] MCUA does not wish to consent are irrelevant to this issue of regulatory interpretation and[,] thus, there is no need to delve into the record regarding Woodbridge's position and/or contractual relationship with Carteret regarding sewer conveyance and cost-sharing of improvement projects. At the end of the day, [the] MCUA has refused to consent to CBP's TWA application, and as a result[,] N.J.A.C. 7:14A-22.8(a)(3)(v)(5) does not permit [the] DEP to move forward with reviewing and/or approving CBP's application. [The] DEP has no regulatory responsibility to interject itself into a dispute between two municipalities.

[(Citation reformatted).]

## II.

CBP argues the DEP deprived it of administrative justice by refusing to consider all relevant elements of its TWA application and the reasons the MCUA and Woodbridge denied consent. It asserts the Commissioner failed to appreciate relevant facts and discounted relevant evidence in reaching the agency's final decision. CBP challenges the Commissioner's statements the DEP "did not rely on the reasons Woodbridge or [the] MCUA provided for not providing consent," and "[t]he reasons for Woodbridge's refusal to consent . . . are outside the scope of th[e] decision." It contends those statements are contrary to N.J.A.C. 7:14A-22.8(a)(3)(v)(5), which states the agency "shall review the reasons for the lack of consent," and "[a]ny such reasons shall be considered." Thus, CBP avers the DEP made a "purely technical decision

9

devoid of any expert opinion or analysis of the application itself," making its final decision "incomplete, injurious to the interests of justice and due process, and contrary to established practice and precedent."

CBP further argues the Commissioner erred in not considering Woodbridge's reasons for withholding consent to its application, given the MCUA's denial rested "solely" upon its refusal to consent. It asserts the Commissioner failed to address the ALJ's interpretation of the regulations and the DEP's obligations, "which placed Woodbridge at the center of the case," and instead relied on "a literal, restrictive, and inflexible" interpretation, contrary to federal case law, the administrative code, and the DEP's own documents.

CBP claims, pursuant to the operational definitions in N.J.A.C. 7:14A-22.1, both Woodbridge and the MCUA can be categorized as "an affected sewerage entity and a treatment works owner." Thus, it contends a full and fair review of its application should have included an investigation into "the relevance and validity" of the reason Woodbridge, as "an affected municipality or sewerage authority," failed to consent, which, in turn, caused the MCUA to deny consent. CBP asserts the DEP ignored its duty to engage in necessary fact-finding, it failed to consider all relevant evidence, dismissed the MCUA's

and Woodbridge's reasons for not consenting as immaterial, and declined to review its application on the merits.

Relying on Saginaw Broadcasting Co. v. Federal Communications Commission, 96 F.2d 554 (D.C. Cir. 1938), CBP asserts the Commissioner ignored his obligation to act as a factfinder, as he refused to address facts in the record and further investigate the matter to reach a just conclusion. It contends the DEP's failure to consider all facts in the record permitted Woodbridge to exceed its authority as a municipality by controlling CBP's access to a sewer line. CBP contends the DEP's "strict interpretation of the regulations . . . violated the established doctrine[s] of flexibility and fairness" and resulted in a "rigid" final agency decision in violation of N.J.A.C. 1:1-1.3(a), and the DEP failed to use its equitable powers to approve CBP's application.

CBP claims Woodbridge changed its position several times, which alone warrants the DEP's consideration in evaluating its TWA application. Moreover, it argues the DEP considered immaterial facts and "interject[ed] itself into the irrelevant intermunicipal dispute" between Woodbridge and Carteret, allowing Woodbridge to "become the sole arbiter of administrative control over access to public works," contrary to its regulatory obligations. It contends the DEP failed in its obligation to coordinate between municipalities

11

and identify alternatives to maximize sewer capacity by refusing to get involved in the dispute. CBP asserts N.J.A.C. 7:14A-22.8(a)(3)(v)(5) was written to allow the DEP to review the reasons for lack of consent and to determine whether to issue a permit even when consent is withheld. It emphasizes the regulation's plain language includes options of approving or denying an application following a "review [of] the reasons for the lack of consent or denial" by the "affected municipality or sewerage authority" insofar as "such reasons shall be considered by the [DEP] in determining whether to issue a [TWA]."

CBP further argues N.J.A.C. 7:14A-22.8(a) is ambiguous about what happens when the receiving treatment plant owner refuses to provide consent for a TWA application, emphasizing it does not expressly prohibit the DEP from issuing a TWA when a treatment plant owner or conveyance system operator withholds consent. CBP asserts the regulation's plain text does not support the DEP's position it must deny an application as administratively incomplete in such cases. It further maintains the DEP has the authority to review the reasons for lack of consent and issue a TWA if those reasons are not justified. CBP claims Carteret has already paid for the necessary sewer capacity, and Woodbridge's refusal to provide consent is rooted in an unrelated political dispute.

Review of an administrative agency's final determination is limited.  In re Carter, 191 N.J. 474, 482 (2007).  We will uphold an agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Stein v. Dep't of L. & Pub. Safety, 458 N.J. Super. 91, 99 (App. Div. 2019) (quoting J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017)).  In evaluating whether the decision was arbitrary, capricious, or unreasonable, we examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. at 482-83).]

Courts are "obliged to give due deference to the view of those charged with the responsibility of implementing legislative programs."  In re Reallocation of Prob. Officer, 441 N.J. Super. 434, 444 (App. Div. 2015) (quoting In re N.J. Pinelands Comm'n Resol., 356 N.J. Super. 363, 372 (App. Div. 2003)).  Thus, we "give substantial deference to an agency's interpretation of the statute it is charged with carrying out, as well as to the interpretation the agency itself gives to its own regulations."  Fedor v. Nissan of N. Am., Inc.,

13

432 N.J. Super. 303, 320 (App. Div. 2013). Deference is due "because 'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (quoting In re Election L. Enf't Comm'n Advisory Op., 201 N.J. 254, 262 (2010)).

Nevertheless, courts will not defer to an agency's interpretation of its own regulations if that interpretation is "plainly unreasonable." Ibid. (quoting In re Election, 201 N.J. at 262). If a court "is satisfied after its review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then it must affirm even if the court feels that it would have reached a different result." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001) (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988)). "Accordingly, it is 'a rare day when an agency cannot give a plausible interpretation for one of its own regulations.'" In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 542 (2016) (quoting US Bank, 210 N.J. at 203-04).

On a de novo review of an agency's interpretation of one of its regulations, "[w]e interpret a regulation in the same manner that we would interpret a statute." Ibid. (alteration in original) (quoting US Bank, 210 N.J. at 199). Our "paramount goal" is to determine the intent of the drafter, which can

14

generally be "found in the actual language of the enactment." US Bank, 210 N.J. at 199. We will not "rearrange the wording of the regulation, if it is otherwise unambiguous, or engage in conjecture that will subvert its plain meaning." Ibid. "Should the plain language analysis yield more than one plausible interpretation of the regulation, a reviewing court may consider extrinsic sources, including 'the long-standing meaning ascribed to the language by the agency charged with its enforcement.'" In re Eastwick, 225 N.J. at 542 (quoting Bedford v. Riello, 195 N.J. 210, 222 (2008)). "If, however, the regulation's 'language is clear, then the interpretative process will end without resort to extrinsic sources.'" Ibid. (quoting Bedford, 195 N.J. at 222). "In short, we must construe the regulation as written." US Bank, 210 N.J. at 199.

Summary decisions under N.J.A.C. 1:1-12.5 are governed by "substantially the same [standard] as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 203 (2015) (quoting Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121 (App. Div. 1995)). We must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the

A-0951-24

alleged disputed issue in favor of the non-moving party." Brill v. Guardian

Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

N.J.A.C. 7:14A-22.8(a), in pertinent part, provides:

> Persons who propose to build, install, or modify treatment works that require the [DEP]'s approval pursuant to this subchapter, shall submit the following information and documents in the manner prescribed in this subchapter:
>
> . . . .
>
> > 3. A resolution and/or written statement of consent from the affected municipality, sewerage authority, owner of the receiving treatment plant, owner/operator of the wastewater conveyance system into which the project will directly connect, and district sludge management lead planning agency (if applicable, see (a)(3)(ii) below) or completion of the [DEP]'s [Consent Form].
> >
> > . . . .
> >
> > > iii. Written statements of consent from the affected sewerage authority shall contain a certification concerning the plant's compliance with applicable NJPDES permit requirements.
> > >
> > > iv. A written statement of consent from the owner/operator of the conveyance system must

certify that the conveyance system has adequate conveyance capacity as defined in N.J.A.C. 7:14A-1.2, to convey the additional flow.

[(Emphases added) (citations reformatted).]

N.J.A.C. 7:14A-22.8(a)(3)(v), in turn, states:

If an applicant is unable to obtain the required written statement of consent, then the applicant may choose to follow the procedures stated in (a)(3)(v)(1) through (5) below. . . .

(1)   The affected sewerage authority or municipality shall submit a written statement of consent to the application or submit written comments to the [DEP] within [sixty] days of the request for consent.  Prior to the expiration of the [sixty-]day period to respond [to] a request for a written statement of consent, the municipality or sew[er]age authority may request a [thirty-]day extension for review of a request for consent.

(2)   Any document issued by a sewerage authority or municipality which is tentative, preliminary, or conditional approval shall not be considered a statement of consent.

(3)   When the affected sewerage authority or municipality does not consent to a project, it shall state all reasons for rejection or disapproval in a resolution and send a certified copy of the resolution to the [DEP].

17

(4)    When the <u>affected municipality or sewerage authority</u> expressly denies a request for a written statement of consent for a project, the permit application may be determined by the [DEP] to be incomplete for processing; or in the alternative, the [DEP] may review the reasons for denial.  Any such reasons shall be considered by the [DEP] in determining whether to issue a [TWA] or sewer connection approval in accordance with this subchapter.

(5)    When the <u>affected municipality or sewerage authority</u> does not issue either a written statement of consent or a denial of the request for consent, the [DEP], upon receipt of proof that the applicant has delivered to the affected agency a written request for a written statement of consent, shall review the reasons for the lack of consent or denial, if known on the basis of reasonably reliable information.  Any such reasons shall be considered by the [DEP] in determining whether to issue a [TWA] or sewer connection approval in accordance with this subchapter.

[(Emphases added) (citation reformatted).]

The Commissioner's interpretation of N.J.A.C. 7:14A-22.8(a) in the DEP's final agency decision was reasonable and entitled to deference.  See <u>US Bank</u>, 210 N.J. at 200.  His reading of the plain language of the regulation logically differentiated between an "affected municipality or sewerage authority" and a "receiving wastewater treatment plant" in finding N.J.A.C.

18

7:14A-22.8(a)(3)(v) does not provide an "alternate path" for approval of TWA applications lacking the owner of the receiving wastewater treatment plant's consent. N.J.A.C. 7:14A-22.8(a)(3)(v)(5) expressly states it applies when an "affected municipality or sewerage authority does not issue either a written statement of consent or a denial of the request for consent," but it does not mention the receiving wastewater treatment plant's owner. As the Commissioner found, the receiving wastewater treatment plant is not expressly mentioned anywhere in N.J.A.C. 7:14A-22.8(a)(3)(v)(1) to (5). Furthermore, the plain language of N.J.A.C. 7:14A-22.8(a)(3) requires consent from the owner of the receiving wastewater treatment plant—here, the MCUA. In the absence of such consent, the DEP sensibly interpreted the regulations in concluding it was not authorized to review CBP's TWA application.

"If a regulation includes particular language in one section but omits it in another, 'it is generally presumed that [the state agency] acts intentionally and purposely in the disparate inclusion or exclusion.'" Est. of Campagna v. Pleasant Point Props., LLC, 464 N.J. Super. 153, 176 (App. Div. 2020) (alteration in original) (quoting N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 148 (2018)) (finding regulations, which made a prospective owner or operator's criminal history a basis to deny licensure, but did not contain any comparable provisions about the significance of a

A-0951-24

prospective resident's criminal history, signified there was no codified duty to perform criminal background checks of prospective residents).  As the Commissioner reasoned, had the DEP intended to carve out an exception to obtaining the receiving wastewater treatment plant's consent, as it did for an "affected municipality or sewerage authority," it would have expressly stated so in N.J.A.C. 7:14A-22.8(a)(3)(v)(5).  See J.H. v. R & M Tagliareni, LLC, 239 N.J. 198, 215 (2019) ("Had the [Department of Community Affairs] determined that radiators required covering, the agency possessed the knowledge and expertise to include them in N.J.A.C. 5:10-14.3(d)'s language, and [the agency] could have very easily done so.").  Accordingly, we are unpersuaded by CBP's arguments and conclude the regulation's plain language and structure support the DEP's interpretation it did not have the authority to review the reasoning behind the MCUA's or Woodbridge's lack of consent.

The Commissioner's finding the DEP intended to mandate the owner of a receiving wastewater treatment plant's consent based on the regulatory history was reasonable.  In the DEP's January 5, 2009 response to a comment, it explained the agency's purpose in requiring the owner of the receiving treatment plant's consent:

> The TWA program does not allocate flow capacity for projects subject to TWA.  This is the responsibility of the owner of the receiving wastewater treatment plant and owner/operator of the wastewater conveyance

system into which the project will directly connect. Subject to meeting all other administrative and technical requirements, TWAs can be processed for approval, <u>as long as the owner of the receiving wastewater treatment plant</u> and owner/operator of the wastewater conveyance system into which the project will directly connect <u>consent to the additional flow anticipated from the project</u>. <u>Such consent is one of the TWA administrative requirements found in N.J.A.C. 7:14A-22.8(a)(3)</u>.

[41 N.J.R. 142(a), 171-72 (Jan. 5, 2009) (response to comment 195) (emphases added) (citation reformatted).]

Accordingly, the regulatory history expressly states the owner of the receiving wastewater treatment plant's consent is an "administrative requirement[]," implying the DEP cannot approve a TWA application lacking such consent. <u>See</u> <u>ibid.</u> The Commissioner's interpretation is supported by the TWA program's purpose to place the responsibility on "the sewerage authority and/or treatment plant owner/operator to implement timely corrective actions and to ensure that additional connections to the treatment works do not result in [violations of their DEP permits or the overflow of conveyance systems]." N.J.A.C. 7:14A-22.1(b).

Given it was undisputed the MCUA did not sign the Consent Form attached to CBP's application, the DEP was not required to engage in additional fact-finding or review the MCUA's or Woodbridge's reasoning for their withholding consent. Accordingly, we affirm the DEP's November 18,

2024 final agency decision and hold it reasonably interpreted its regulations to require the consent of the owner of the receiving wastewater treatment plant as a prerequisite to it considering a TWA application. Its findings were not arbitrary, capricious, or unreasonable, and we discern no basis to disturb its decision.

To the extent we have not specifically addressed any remaining arguments CBP raised, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division